IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FELIX MARRERO, | : Civ. No. 1:24-CV-1772 |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : (Chief Magistrate Judge Bloom) |
| FRANK BISIGNANO, | : |
| Commissioner of Social Security,[1] | : |
| | : |
| Defendant. | : |

## MEMORANDUM OPINION

## I.  Introduction

On July 14, 2021, Felix Marrero filed a Title II application for a period of disability and disability insurance benefits. (Tr. 17). Following a hearing before an Administrative Law Judge ("ALJ"), the ALJ found that Marrero was not disabled from his alleged onset date of disability of May 31, 2021, through October 31, 2023, the date of the ALJ's decision. (Tr. 17, 27).

---

[1] On May 7, 2025, Frank Bisignano became the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g), Frank Bisignano is substituted as the defendant in this suit.

Marrero now appeals this decision, arguing that the ALJ's decision is not supported by substantial evidence. After a review of the record, and mindful of the fact that substantial evidence "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019), we conclude that substantial evidence supported the ALJ's findings in this case. Therefore, we will affirm the decision of the Commissioner denying this claim.

## II.    Statement of Facts and of the Case

On July 14, 2021, Marrero applied for disability insurance benefits, citing an array of physical impairments, including diabetes, neuropathy, colitis, asthma, high blood pressure, high cholesterol, right rotator cuff surgery, and left hand surgery. (Tr. 64). Marrero was 50 years old at the time of the alleged onset of disability, had a limited education, and had past employment as a heavy equipment operator. (Tr. 25).

With respect to these alleged impairments the record revealed the following: Marrero had a rotator cuff tear surgically repaired in May of 2020. (Tr. 1459). In June of 2021, Marrero underwent a trio of

procedures on his left hand: a carpal tunnel release, a wrist volar ganglion cyst excision, and a left middle finger A1 pulley release. (Tr. 1628). At a follow-up later that month, Certified Physician Assistant Taylor Marks noted that Marrero's left hand was neurovascularly intact, as was his sensation in that hand. (Tr. 565).

In October of 2021, state agency medical consultant Dr. Roman Bilynski reviewed Marrero's medical record and concluded, *inter alia*, that Marrero was limited to "standing and/or walking" for "about six hours" in an eight-hour workday. (Tr. 68). In March of 2022, another state agency consulting physician, Dr. Robert Warner, also reviewed the medical record and reached the same opinion as to Marrero's standing and/or walking limitations. (Tr. 76). Both doctors concluded Marrero was capable of a range of light work. (Tr. 71, 78).

Marrero was diagnosed with a re-tear of his right rotator cuff in October of 2022, which was initially treated without surgery. (Tr. 1459). Marrero consulted with Dr. Jason Wong in December of 2022, complaining of shoulder pain, and Dr. Wong diagnosed rotator cuff syndrome of the right shoulder. (Tr. 1421-24).

3

In January 2023, Marrero consulted Dr. Douglass Zaruta about his shoulder pain. (Tr. 1462). Dr. Zaruta's examination showed Marrero had reduced range of motion and decreased strength in his right shoulder, as well as a positive Neer and Hawkin's sign, indicating a shoulder impingement. (*Id.*). In June of 2023, Marrero underwent revision surgery on his right shoulder. (Tr. 1549).

After the surgery, Marrero attended physical therapy for approximately two months. (Tr. 1551, 1716). In July of 2023, his physical therapist, Kyle Barna, noted that Marrero continued to experience shoulder pain, soreness, a restricted range of motion, and "clicking/cracking sensations." (Tr. 1716-17).

It is against this factual backdrop that the ALJ conducted a hearing in Marrero's case on July 26, 2023. (Tr. 32-62). Marrero and a vocational expert ("VE") both testified at this hearing. Marrero testified about his past work, his shoulder pain, his difficulty breathing and the various treatments he uses for asthma, his recent shoulder surgery, and his limitations around walking, sitting, and lifting. (Tr. 38-50). The VE then classified Marrero's past work and answered hypothetical questions

4

about an individual with Marrero's background and specific types of limitations, including a discussion with Marrero's attorney about limitations related to reaching and their potential effect on occupational fitness. (Tr. 51-60).

Following this hearing, on October 31, 2023, the ALJ issued a decision denying Marrero's application for benefits. (Tr. 17-27). In that decision, the ALJ first concluded that Marrero met the insured status requirement through December 31, 2025. (Tr. 19). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found Marrero suffered from the following severe impairments: diabetes, diabetic neuropathy, asthma, right rotator cuff tear (status post repair), and left carpal tunnel release. (*Id.*). At Step 3 the ALJ determined that Marrero did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (*Id.*).

Between Steps 3 and 4 the ALJ concluded that Marrero retained the residual functional capacity to:

> [P]erform light work as defined in 20 CFR 404.1567(b) except he should avoid unprotected heights and industrial

machinery. He could occasionally balance, stoop, crouch, crawl, kneel, and climb ramps and stairs but should avoid climbing ladders or scaffolds. He could tolerate occasional exposure to extreme cold temperatures, humidity, wetness, and environmental irritants. He should avoid use his bilateral upper extremities for overhead reaching in the performance of job duties.

(Tr. 22).

In reaching this RFC determination, the ALJ made the following findings: the ALJ considered Marrero's reported, subjective symptoms, and found that "claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record [.]" (Tr. 23). The ALJ explained that the evidence showed Marrero's asthma was "well-controlled [,]" that his carpal tunnel syndrome had improved after surgery, and that his right shoulder pain could be managed with a limitation to light work and a prohibition on bilateral overhead reaching. (Tr. 23-24). The ALJ also found that Marrero's daily activities demonstrated that he "manages his own personal care, drives, watches

television, and reads, albeit all with some limitations [,]" and despite those limitations, these activities "suggest the claimant can perform work within the [RFC.]" (Tr. 24).

The ALJ next considered the medical opinions on record. He found the opinions of the state agency medical consultants, Drs. Bilynsky and Warner, to be "generally persuasive, as they are supported by and consistent with the medical record." (Tr. 24). The ALJ added that Marrero was limited in one additional way not opined by these medical sources, in his ability to reach overhead. (*Id.*).

The ALJ then found at Step 4 that Marrero could not perform his past work but, at Step 5, found that he could perform other jobs that existed in significant numbers in the national economy, such as pre-assembler, assembler, and inspector. (Tr. 26). Having reached these conclusions, the ALJ determined that Marrero had not met the demanding showing necessary to sustain this claim for benefits and denied this claim. (Tr. 26-27).

This appeal followed. (Doc. 1). On appeal, Marrero challenges the adequacy of the ALJ's decision arguing it is not supported by substantial

evidence. (Doc. 12 at 4-16). As discussed in greater detail below, having considered the arguments of counsel and carefully reviewed the record, we conclude that the ALJ's decision should be remanded for further consideration by the Commissioner in accordance with this decision.

## III.  Discussion

### A.  Substantial Evidence Review – the Role of this Court

This Court's review of the Commissioner's decision to deny benefits is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. §405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence means less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

A single piece of evidence is not substantial evidence if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)) (internal quotations omitted). However, where there has been an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). The court must "scrutinize the record as a whole" to determine if the decision is supported by substantial evidence. *Leslie v. Barnhart*, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has explained the limited scope of our review, noting that "[substantial evidence] means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek* 139 S. Ct. at 1154 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Under this standard, we must look to the existing administrative record to determine if there is

"'sufficient evidence' to support the agency's factual determinations." *Id.* Thus, the question before us is not whether the claimant is disabled, but rather whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was based upon a correct application of the law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts"); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

When conducting this review, we must remain mindful that "we must not substitute our own judgment for that of the fact finder." *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)). Thus, we cannot re-weigh the evidence. Instead, we must determine whether there is substantial evidence to

support the ALJ's findings.  In doing so, we must also determine whether the ALJ's decision meets the burden of articulation necessary to enable judicial review; that is, the ALJ must articulate the reasons for his decision.  *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000).  This does not require the ALJ to use "magic" words, but rather the ALJ must discuss the evidence and explain the reasoning behind his decision with more than just conclusory statements.  *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (citations omitted).  Ultimately, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests."  *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).

## B. <u>Initial Burdens of Proof, Persuasion, and Articulation for the ALJ</u>

To receive disability benefits under the Social Security Act, a claimant must show that he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); *see also*

11

20 C.F.R. §§404.1505(a), 416.905(a).  This requires a claimant to show a severe physical or mental impairment that precludes [him/her] from engaging in previous work or "any other substantial gainful work which exists in the national economy."   42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a).  To receive benefits under Title II of the Social Security Act, a claimant must show that he or she is under retirement age, contributed to the insurance program, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination, the ALJ follows a five-step evaluation.  20  C.F.R.  §§404.1520(a),  416.920(a).  The ALJ must sequentially determine whether the claimant:  (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals a listed impairment; (4) is able to do his or her past relevant work; and (5) is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").  20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also determine the claimant's RFC.  RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett*, 220 F.3d at 121 (citations omitted); *see also* 20 C.F.R. § 404.1545(a)(1).  In making this assessment, the ALJ must consider all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.  20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).  Our review of the ALJ's determination of the plaintiff's RFC is deferential, and that determination will not be set aside if it is supported by substantial evidence.  *Burns v. Barnhart,* 312 F.3d 113, 129 (3d Cir. 2002).

The claimant bears the burden at Steps 1 through 4 to show a medically determinable impairment that prevents him or her from engaging in any past relevant work.  *Mason*, 994 F.2d at 1064.  If met, the burden then shifts to the Commissioner to show at Step 5 that there are jobs in significant numbers in the national economy that the claimant can perform consistent with the claimant's RFC, age, education, and

work experience. 20 C.F.R. §§404.1512(f), 416.912(f); *Mason*, 994 F.2d at 1064.

With respect to the RFC determination, courts have followed different paths when considering the impact of medical opinion evidence on this determination. While some courts emphasize the necessity of medical opinion evidence to craft a claimant's RFC, *see Biller v. Acting Comm'r of Soc. Sec.,* 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013), other courts have taken the approach that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006). Additionally, in cases that involve no credible medical opinion evidence, courts have held that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." *Cummings v. Colvin*, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

Given these differing approaches, we must evaluate the factual context underlying an ALJ's decision. Cases that emphasize the importance of medical opinion support for an RFC assessment typically

arise in the factual setting where well-supported medical sources have found limitations to support a disability claim, but an ALJ has rejected the medical opinion based upon an assessment of other evidence. *Biller*, 962 F. Supp. 2d at 778–79. These cases simply restate the notion that medical opinions are entitled to careful consideration when making a disability determination. On the other hand, when no medical opinion supports a disability finding or when an ALJ relies upon other evidence to fashion an RFC, courts have routinely sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. *See Titterington*, 174 F. App'x 6; *Cummings,* 129 F. Supp. 3d at 214–15. Ultimately, it is our task to determine, in light of the entire record, whether the RFC determination is supported by substantial evidence. *Burns,* 312 F.3d 113.

C. <u>**Legal Benchmarks for the ALJ's Assessment of Medical Opinions**</u>

The plaintiff filed this disability application in July of 2021 after Social Security Regulations regarding the consideration of medical opinion evidence were amended. Prior to March of 2017, the regulations established a hierarchy of medical opinions, deeming treating sources to

be the gold standard.  However, in March of 2017, the regulations governing the treatment of medical opinions were amended.  Under the amended regulations, ALJs are to consider several factors to determine the persuasiveness of a medical opinion: supportability, consistency, relationship with the claimant, specialization, and other factors tending to support or contradict a medical opinion.  20 C.F.R. § 404.1520c(c).

Supportability and consistency are the two most important factors, and an ALJ must explain how these factors were considered in his or her written decision.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *Blackman v. Kijakazi*, 615 F. Supp. 3d 308, 316 (E.D. Pa. 2022).  Supportability means "[t]he more relevant the objective medical evidence and supporting explanations . . . are to support his or her medical opinion(s) . . . . the more persuasive the medical opinions . . . will be."  20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).  The consistency factor focuses on how consistent the opinion is "with the evidence from other medical sources and nonmedical sources."  20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

While there is an undeniable medical aspect to the evaluation of medical opinions, it is well settled that "[t]he ALJ – not treating or

16

examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). When confronted with several medical opinions, the ALJ can choose to credit certain opinions over others but "cannot reject evidence for no reason or for the wrong reason." *Mason*, 994 F.2d at 1066. Further, the ALJ can credit parts of an opinion without giving credit to the whole opinion and may formulate a claimant's RFC based on different parts of different medical opinions, so long as the rationale behind the decision is adequately articulated. *See Durden v. Colvin*, 191 F. Supp. 3d 429, 455 (M.D. Pa. 2016). On the other hand, in cases where no medical opinion credibly supports the claimant's allegations, "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." *Cummings*, 129 F. Supp. 3d at 214–15.

### D. This Case Will Be Affirmed.

Our review of the ALJ's decision denying an application for benefits is significantly deferential. Our task is simply to determine whether the ALJ's decision is supported by substantial evidence in the record; that is

"only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek*, 139 S. Ct. at 1154. Judged against this deferential standard of review, we conclude that substantial evidence supported the ALJ's decision in this case.

Marrero argues that, because the ALJ found the medical opinions of Drs. Bilynski and Warner persuasive, he was obligated to either include every limitation opined necessary by those persuasive opinions in the RFC or explain why any given limitation was omitted. Those opinions, *inter alia*, limited Marrero to "about" six hours of "standing and/or walking" in an eight-hour workday. (Tr. 68, 76). Marrero argues that limitation is not satisfied by the RFC's restriction to light work. He further argues that the ALJ was obligated to conduct a function-by-function assessment of Marrero's abilities to sit, stand, and walk.

The regulations define light work as including "a good deal of walking or standing [.]" 20 C.F.R. § 404.1567(b). SSR 83-10 further provides that "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251. Thus, courts have affirmed ALJ decisions

limiting a plaintiff to light work where the claimant was limited to standing or walking for six hours in an eight-hour workday. *See e.g.*, *Massey v. King*, No. 23-2135, 2025 WL 461553, at *1 n.2 (W.D. Pa. Feb. 11, 2025) (finding a limitation to light work accounted for a limitation to standing and walking for up to six hours in an eight-hour workday); *Anthony P. v. Comm'r of Soc. Sec.*, No. 22-4181, 2024 WL 772583, at *7 (D.N.J. Feb. 26, 2024) (concluding that the ALJ's limitation to light work, after discussing the medical evidence, "implicitly concluded . . . that Plaintiff could stand/walk for approximately six hours in an eight-hour workday[.]").  In this case, both medical sources explicitly concluded that Marrero was capable of light work.  (Tr. 71, 78).  The ALJ included a limitation to light work in his questions to the VE and in the RFC.  (Tr. 22, 52).

The plaintiff argues that the ALJ's failure to conduct a specific function-by-function assessment requires a remand.  But an omission of the function-by-function assessment does not, on its own, force remand.  *See Barbour v. Kijakazi*, No. 4:20-CV-861, 2021 WL 4478332 at *5 (M.D. Pa. Sep. 30, 2021) ("ALJ's failure to conduct a function-by-function

assessment does not require remand where the ALJ's decision is otherwise supported by substantial evidence."). As we have explained, the ALJ's limitation to light work was supported by the medical opinion evidence and encompassed the standing and walking limitations set forth in those opinions. Accordingly, the absence of a specific function-by-function assessment in this case does not require remand, where we have concluded that the ALJ's RFC determination was supported by substantial evidence.[2]

---

[2] While the plaintiff contends that our decision in *Steinmetz v. Colvin*, Civ. No. 1:23-CV-2066, 2025 WL 36159 (M.D. Pa. Jan. 6, 2025) is illustrative of the need for a remand, this case differs from *Steinmetz* in a meaningful way. In *Steinmetz*, the ALJ was faced with competing medical opinions, all of which found specific limitations as to the plaintiff's ability to sit, stand, and walk that fell below the full range of light work, *i.e.*, less than six hours of an eight-hour workday. *Id.* at *8. The ALJ found those opinions persuasive but failed to include them within and, additionally, failed to explain the omission of those limitations. *Id.* Thus, we concluded that the ALJ's decision was not supported by substantial evidence because it did not set forth an adequate explanation for omitting limitations the ALJ found persuasive. *Id.* Here, unlike in *Steinmetz*, the ALJ included the limitations he found persuasive—the limitation to light work is a limitation to a total of standing and walking for six hours in an eight-hour workday. Accordingly, no remand is required.

Marrero next argues that the ALJ erred in failing to resolve an apparent conflict between the VE's testimony and the DOT as required by SSR 00-04p. *See* SSR 00-04p, 2017 WL 839466 at *2. Marrero contends that the ALJ erroneously relied on the VE's testimony that the jobs identified at Step 5 would not require overhead reaching. But the ALJ explained in his decision that "[p]ursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles. Any deviation from the DOT is based upon the experience and observations of the vocational expert." (*Id.*). Indeed, the VE testified that while the DOT did not differentiate between directional reaching or reaching with left or right extremities, based on his experience observing and talking to employers, those jobs do not require overhead reaching. (Tr. 53-54). Contrary to the plaintiff's assertion that the ALJ was not entitled to rely on this explanation, SSR 00-04p explains that "[r]easonable explanations for such conflicts . . . include . . . a VE's or VS's experience in job placement or career counseling." SSR 00-04p, 2017 WL 839466 at *2. Accordingly, the ALJ appropriately resolved the

conflict and was entitled to rely on the VE's testimony, and this issue does not require a remand.

Accordingly, under the deferential standard of review that applies to appeals of Social Security disability determinations, we conclude that substantial evidence supported the ALJ's evaluation of this case, and this decision should be affirmed.

## IV.    Conclusion

For the foregoing reasons, the decision of the Commissioner in this case will be affirmed, and the plaintiff's appeal denied.

An appropriate order follows.

Submitted this 20th day of August 2025.

_s/ Daryl F. Bloom_
Daryl F. Bloom
Chief United States Magistrate Judge